## Case No. 16,563a.

## UNITED STATES v. TWENTY-FIVE CASES OF CLOTH.

[2 Haz. Reg. U. S. 374.]

District Court, E. D. Pennsylvania. June 1, 1840.

CUSTOMS DUTIES — FRAUDULENT INVOICES — FORFEITURES.

[Where large quantities of imported goods were seized at the same time and in the same place, and, in a proceeding to forfeit the same, on the ground that the invoices were made up with intent to defraud the revenue, the claimants were charged with a systematic arrangement, not confined to the particular importations, to defraud the revenues, and the jury found that all the goods were subject to forfeiture, held that a new trial should not be granted in respect to a particular package merely because the appraisement thereof by the customs officers was actually below the invoice value; for, even if the invoice were correct, the court would not be warranted in holding that it was not so made up with intent to aid in the general design, and in the expectation that it would be selected for examination, and would thus furnish the standard for the appraisement of the other packages.]

This was an action by the United States against 25 cases of cloths, 15 cases of cassimeres, 1 case of cloths and cassimeres, and 24 pieces of pilot cloths, seized at the store of W. Blackburne & Co.

HOPKINSON, District Judge. I certainly can have no inclination to set aside a verdict which has been the result of so much laborious investigation, unless it were clearly necessary to vindicate some principle of law; especially when the objection applies but to a small part of the property affected by the verdict. [See Case No. 16,563.] No principle of law is involved in the question now brought before the court, nor is the verdict against the direction of the court on any matter of evidence. The allegation mainly, and indeed altogether, relied on for support of the motion for a new trial is, that certain goods, imported in the ship Virginia, and included in the information, have been condemned by the jury, when there was no evidence to warrant their condemnation; that the appraisements made of them, on behalf of the government, actually valued them lower than they were charged in the invoice, and therefore there could have been no valuation of them with design to evade or defraud the revenue. As regards the appraisement, this is true, but it does not therefore necessarily follow that there was no evidence in the case to justify the verdict. This might be a fair and legal inference, if a single fact had been put in issue, and the question was only as to the particular packages of goods thus invoiced and appraised. But in a case in which a charge is made of an artful and extensive fraud, of an organized combination, to evade the duties payable to the revenue, it is clear that acts which, standing each by itself, may have the appearance of entire innocence, when taken as a part of a general plan, may be in-

fected with the general fraudulent character; may, even by their correctness, be intended to deceive, and form a part of the machinery to accomplish the design of fraud. I cannot therefore consider the question, as it has been treated by the counsel of the claimants, as being the same as if these particular packages only were the subjects of the prosecution, and a verdict had been rendered against them, or the proof which applied only to them. I must take the case as it was presented to the jury, as a charge of a systematic arrangement to defraud the revenue, not confined to this particular importation. but by a large and extensive course of operations, carried on by the same importers about the same period, and with one common design.

The packages now especially in question were seized in the store of Messrs. Blackburne, in the same place, and under the same circumstances, with other goods which have been condemned as falsely or fraudulently imported by invoices. in which they were undervalued, to defraud the revenue. As to the other packages contained in the same invoice with these goods, we know nothing of them, whether they were or were not undervalued. If they were charged below their cost, a suspicion might well be cast upon those in question, and an inference not unreasonably drawn that the invoice was made up with the intention of fraud, and that a deception was to be affected, by the low rate at which these goods were invoiced. No account has been given of the other goods in the same invoice, nor any reason why these were charged even below the real value or cost. This. as an insulated circumstance, would not afford a strong ground of suspicion, but in inquiries of this sort, in searching a question of fraud, we must look to small circumstances; obvious and striking proofs will, of course, be avoided. Again, the claimants have omitted, as to the goods, as well as the others, to show by direct proof what was their actual cost. They left them to their fate, or the same defence or the same chance, to which they committed the rest; and this was not because of the appraisement made of them being below the invoice prices, for that was unknown to them, and was disclosed for the first time on the trial. From the observation made by one of the jurors when the verdict was rendered, I understood that this omission had weight with them in making no discrimination in favor of these packages. They certainly were liable to the objection, so weighty in such cases, that the claimants had not produced the best evidence in their power of their true and actual value and cost; not on the ground of the onus probandi being cast upon them by the act of congress, but on the general rule of evidence in all cases.

The whole case submitted to the jury was one laid in a charge of a deep and extensive system of fraud, which would necessarily consist of many parts, and be effected by various contrivances of concealment and deception. It is not for me to say the jury had no warrant for believing that even the low valuation of the packages was in question. A valuation below their actual value or cost was not made for the purpose of assisting the general design, and of blinding suspicion as to the greater quality. Nor can I say that the jury had no ground to believe that there was an expectation by the importers, that these packages would be selected at the custom house as the standards by which the other packages would be judged. I cannot say what reason they may have had for indulging such expectations, and acting upon them. With such examinations as we have seen were made in the custom house of New York, very flimsy covers may have been trusted for concealment.

It has been said that these packages and pilot cloths were withdrawn from the jury by the counsel for the United States. I do not so understand it. A statement was made, for the convenience of the jury, to show at one view the amount of the undervaluations of all the cloths seized, and the duties that had been thereby lost to the United States. These packages were not included in that statement, because they were not undervalued, and no duties had been lost by them. But their condemnation was insisted upon by the counsel of the United States, for the reasons I have mentioned. The jury have thought them sufficient; they had a right to do so. and their having done so affords no ground for disturbing their verdict.

The motion is refused.